UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADAM A. LOCKE,

        Plaintiff,

v.                                                      Case No. 18-C-1454

CORRECT CARE SOLUTIONS, LLC et al.,

        Defendants.

**ORDER**

Plaintiff Adam Locke, a *pro se* plaintiff currently incarcerated at Leavenworth U.S. Penitentiary (Leavenworth), commenced this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. The court screened Locke's complaint and allowed him to proceed on a deliberate indifference claim against unknown employees of Correctional Healthcare Companies (now identified as Correct Care Solutions, LLC, or Correct Care) and Dodge County Detention Facility (DCDF) whom Locke claims ignored his requests for medical care while he was confined at DCDF. Although the court found that Locke only stated claims against these Doe defendants, Correct Care and Dodge County Sheriff Dale Schmidt remained as defendants in the case to help Locke identify the Correct Care nurses and DCDF officers or staff who allegedly ignored his treatment requests.

In its screening order, the court directed Correct Care and Sheriff Schmidt to identify and send to Locke the names of the individuals who received Locke's treatment requests during his time at DCDF within thirty days of service of the complaint and the screening order. The court also directed Locke to file an amended complaint naming the Doe defendants within thirty days after

receiving the identifications. Sheriff Schmidt and Correct Care provided the required information on November 28, 2019, and December 6, 2018, respectively. On January 14, 2019, Locke filed a motion for extension of time to file an amended complaint naming the Doe defendants. The court granted Locke's motion and imposed a deadline of February 15, 2019, for Locke to file an amended complaint.

On February 20, 2019, Correct Care filed a motion to dismiss Locke's complaint with prejudice due to his failure to file an amended complaint by the February 15, 2019 deadline. In his brief in opposition to the motion to dismiss and in subsequent motions for extension of time, Locke insists that he filed an amended complaint on or about the end of January 2019. Dkt. Nos. 31 at 2, 35 at 1, 36 at 2. Locke claims that he requested a copy of this case's docketing sheet the same day that he received a copy of Correct Care's motion to dismiss. Upon receipt of the docketing sheet copy, Locke noticed that the court never received the amended complaint he allegedly filed; he surmises that Leavenworth U.S. Penitentiary must have misplaced it. On April 1, 2019, Locke filed a motion for leave to amend his complaint with an attached proposed amended complaint.

The Seventh Circuit has stated that, when faced with a *pro se* complaint, "it is incumbent on [the court] to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Part of this responsibility includes assisting *pro se* plaintiffs in determining the identities of unnamed defendants and allowing plaintiffs to amend their complaints to properly name the defendants. *Id.* In some circumstances, the court may appoint counsel for the limited purpose of assisting a plaintiff in amending the complaint. *Id.* at 556.

Here, the court directed the defendants to identify the recipients of Locke's treatment requests while he was housed at DCDF, and they did so. The court granted Locke an extension of time to February 15, 2019, to file an amended complaint, and Locke failed to meet the extended deadline. Correct Care and Sheriff Schmidt, who later joined and adopted Correct Care's position, argue that Locke's noncompliance warrants dismissal, while Locke claims that he previously filed an amended complaint that did not make it to the court for some unknown reason. Whether Locke in fact filed a complaint at the end of January 2019 is unclear, but it would be an abuse of discretion at this stage to dismiss his claims with prejudice given the court's "special responsibility . . . to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim." *Id.* at 555; *see also Phillips v. Ill. Dep't of Fin. & Prof'l Regulation*, 718 F. App'x 433, 436 (7th Cir. 2018). Locke has only been granted one previous extension to file an amended complaint, and based on the allegations in the original complaint and in the proposed amended complaint, his allegations are not "patently without merit." *See Williams v. Wahner*, 731 F.3d 721, 734 (7th Cir. 2013). Accordingly, Locke's motion for leave to amend his complaint will be granted, Correct Care's motion to dismiss will be denied, and the court will proceed to screen Locke's amended complaint.

### SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim

3

is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Locke's allegations concern his time at DCDF from September 22, 2016, through October 16, 2016. Locke claims that he was transferred to DCDF from Green Bay Correctional Institution (GBCI) on or about September 22, 2016, and that, upon arrival, he completed a medical questionnaire stating that he sustained a number of injuries in a car accident that were being treated at GBCI. Locke reported that he had a spinal cord injury, neck and back pain, and muscle spasms and cramps, which interfered with his sleep and his ability to stand up straight for an extended period. These injuries were previously treated through use of a foam roller and physical therapy, though Locke noted that physical therapy did not help. Locke also wrote that a physician at GBCI recommended that he request an MRI once transferred.

The next day, on September 23, nurse Kassie Knoll responded, stating that an MRI could not be conducted until Locke saw a DCDF physician, who would determine whether to order an MRI after reviewing Locke's medical file. Knoll told Locke to ask medical staff during the day for a medical release of information form to sign so that DCDF could obtain his medical records. Knoll also told Locke that it can take 1-2 weeks to be seen by medical staff and that DCDF does not issue foam rollers.

Locke filed a medical request on September 24, stating that he is in constant pain, unable to sleep, and experiencing neck and back spasms. Locke asked for an additional mattress given that DCDF does not issue foam rollers. Knoll responded the following day, September 25, informing Locke that she cannot provide him with an additional mattress, that he did not bring medical papers with him to explain his pain, that he needed to sign the medical release of information form, and that he could request Tylenol up to three times per week. Locke filed another medical request on September 26, asking to be sent the release of information form. He alleges this request was ignored.

On September 29, Locke filed another medical request, stating that his medical conditions were being ignored and that he requested but had not received a release of information form. Locke alleges that he asked several DCDF staff for the form but was told that the sheets were not on the medicine cart. Later the same day, Locke received and signed a medical release of information form. On October 2, Locke inquired in another request why the process of his medical records being transferred took so long, and he noted that he was in constant pain. Locke alleges that DCDF received his medical records, which totaled over seventy pages, from GBCI on October 5 but refused to provide him with medical care.

5

Locke was transferred to Leavenworth on October 16. There, he was diagnosed with whiplash, with most pain in his posterior neck and upper back, extending to his occiput. Leavenworth staff also noted that Locke's greatest discomfort was present during sleep and that he had radiating pain down his left arm. On November 10, Locke received an X-ray, which revealed slight reversal of normal cervical lordosis, likely positional. A specialist explained to Locke that the normal curvature of his neck leading down to his back was gone due to inflamed and damaged muscle and scar tissue, which was the source of most of his neck pain. Locke was placed on a physical therapy list and given nerve and pain medication, which he took for almost eighteen months.

Locke claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they ignored his requests prior to and after receiving his medical records from GBCI. He also claims that DCDF and Correct Care maintain a deficient policy and custom that unnecessarily delays the provision of medical care to inmates entering DCDF, and that he was forced to endure ongoing pain for several weeks because of this deficiency. At a minimum, he suggests, DCDF and Correct Care could call inmates' transferring institutions to verify preliminary medical information instead of holding care in abeyance until medical records arrive. Locke sues all defendants in their individual and official capacities.

## THE COURT'S ANALYSIS

The Eighth Amendment of the Constitution prohibits "cruel and unusual punishments," which includes punishments that involve the unnecessary and wanton infliction of pain. U.S. Const. amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). A prison official's deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction

of pain that the Eighth Amendment proscribes. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). To state a claim for deliberate indifference to a serious medical need, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

Locke states a deliberate indifference claim against nurse Kassie Knoll. Locke sufficiently alleges a serious medical need—whiplash that resulted in ongoing upper back and neck pain as well as muscle spasms and cramps. *See Gray v. Sorrels*, 744 F. App'x 563, 570 (10th Cir. 2018); *Dye v. Bartow*, No. 14-cv-76-bbc, 2014 WL 1055328, at *3 (W.D. Wis. Mar. 19, 2014). Locke also sufficiently alleges that Knoll was subjectively indifferent to his complaints of ongoing pain. According to Locke, Knoll was aware of but failed to take any action to treat his ongoing pain, instead choosing to delay until Locke completed a medical release of information form. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). These allegations are sufficient to allow Locke to proceed on an individual capacity claim against Knoll.

Although Locke has sued all of the defendants in their individual and official capacities, the record reflects that Knoll is a "*former* jail medical service provider," Dkt. No. 20 at 1 (emphasis added), meaning an official capacity claim is not properly brought against her to remedy an alleged deficiency in Correct Care's policies or customs. Nonetheless, Locke has stated official capacity claims against Correct Care and Sheriff Dale Schmidt. While Correct Care is named directly, the official capacity claim against Sheriff Schmidt operates as a claim against Dodge County. *Wilson*

7

*v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 383 (7th Cir. 1988). Locke alleges that Correct Care and DCDF have deficient policies and procedures for providing medical care to incoming inmates. Specifically, Locke alleges that Correct Care and DCDF delay the provision of care until an inmate fills out a release of information form and the inmate's medical records are received. Correct Care and DCDF also allegedly do not contact the institution from which an inmate is transferred to obtain preliminary medical information. Moreover, according to Locke, even after receiving an inmate's medical records, Correct Care and DCDF fail to promptly provide care as needed. Locke alleges that theses deficiencies unnecessarily caused him to endure prolonged pain after his transfer from GBCI. These allegations are sufficient to state official capacity claims against Correct Care and Sheriff Schmidt, and because an official capacity suit against Sheriff Schmidt is a suit against Dodge County, the County need not be separately listed as a defendant. *See Holmes v. Sheahan*, 930 F.2d 1196, 1200 (7th Cir. 1991).

Locke may not proceed against Sheriff Schmidt in his individual capacity, however, as Locke does not allege that Sheriff Schmidt was personally involved in a constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). While Locke states generally that Sheriff Schmidt refused to provide him with medical care, he does not allege that Sheriff Schmidt was made personally aware of his medical condition. That DCDF received Locke's medical records does not mean that Schmidt was made aware of Locke's medical needs. Nurse Knoll, in contrast, received Locke's multiple medical requests that conveyed details of his medical condition. Locke may therefore not proceed against Sheriff Schmidt in his individual capacity for failure to plausibly allege personal involvement. *O'Shell v. Cline*, 571 F. App'x 487, 491 (7th Cir. 2014).

In sum, Locke may proceed on Eighth Amendment claims against nurse Knoll in her individual capacity and Correct Care and Sheriff Schmidt in their official capacities.

**IT IS THEREFORE ORDERED** that Locke's motion for leave to amend his complaint (Dkt. No. 38) is **GRANTED**. The Clerk is directed to detach and e-file the proposed amended complaint (Dkt. No. 38-1) as an Amended Complaint.

**IT IS FURTHER ORDERED** that Correct Care's motion to dismiss (Dkt. No. 28) is **DENIED** and Locke's motions for extension of time (Dkt. Nos. 35, 36) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Kassie Knoll pursuant to Federal Rule of Civil Procedure 4. Locke is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. Defendants Correct Care Solutions, LLC and Sheriff Dale Schmidt are already defendants in this action and will receive electronic notice of the amended complaint and this order.

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that copies of the amended complaint and this order be sent to Dodge County Corporation Counsel.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>125 S. Jefferson Street, Suite 102
>Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide a correct address could result in dismissal of the case for failure to prosecute.

Dated this  12th  day of April, 2019.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court